## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

WHITFIELD PETER WOOD,
                    - Plaintiff


        v.                                NO.  3:03-CV-1960(TPS)


DR. EDWARD PESANTI, ET AL.,
                    - Defendants


### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        Plaintiff has brought this action against the defendants, Dr.
Edward Pesanti, Cheryl Malcolm, R.N., and Dr. Mark Buchanan, for
damages and injunctive relief arising out of their alleged denial
of medical care for a ruptured ligament in his left knee, in
violation of the Eighth and Fourteenth Amendments to the United
States Constitution.   The matter is pending before the court
pursuant to 28 U.S.C. §636(c).  As explained below, the defendants'
motion for summary judgment **(Dkt. #16)** is **GRANTED in part; DENIED
in part; and DENIED in part without prejudice** on the present
record.

### I.   STANDARD OF REVIEW

        The standards for ruling on motions for summary judgment are
well-settled.  Rule 56(c) of the Federal Rules of Civil Procedure
states that summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of demonstrating a lack of genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994). The court must view all the evidence presented by the moving party in light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). If evidence exists from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

Once the moving party has satisfied his burden of production, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Anderson, 477 U.S. at 250. The nonmoving party must identify specific facts requiring trial. Celotex Corp., 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'"); Anderson, 477 U.S. at 248 (a nonmoving party "may not rest upon the mere allegations or denials of his pleadings but . . . must set forth specific facts showing that there is a genuine issue for trial"); Trebor Sportswear Co. v. The LTD. Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). See also Dister v. Cont'l Group, Inc., 896 F.2d 1108, 1114-15 (2d Cir. 1988)(the nonmoving party must present "concrete evidence from which a reasonable juror could return in [plaintiff's] favor"). "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001)(citations omitted). Plaintiff has done this here.

## II. FACTS

The plaintiff injured his knee while traveling to work on January 10, 2000. That same day, he had surgery to repair a rupture of the infrapatellar ligament of his left knee. Both plaintiff and the defendants acknowledge that plaintiff later reinjured his knee, but differ as to *when* the re-injury occurred. Defendants claim that on January 20th, plaintiff fell again and may have "bent his knee." Plaintiff alleges that the reinjury

-3-

occurred on May 10, 2000, when he fell in the shower.  Regardless
of when the re-injury occurred, the parties agree that plaintiff
reported falling and striking his left knee and was diagnosed with
a "knee contusion" at Sharon Hospital on May 10, 2000.

Despite the original diagnosis of a "knee contusion,"
plaintiff contends that the next day, Dr. Chin reviewed the x-rays
and noted that Mr. Wood's patella appeared to be "riding high,"
which was potentially indicative of a patellar tendon rupture.
This hypothesis was confirmed on September 26, 2000, when Dr.
Rashkoff's office diagnosed plaintiff as having a rupture of the
infrapatellar ligament and knee effusion.

On November 7, 2000, plaintiff had an MRI which confirmed a
"complete disruption of the patellar ligament."  At that point, Dr.
Rashkoff "recommended reconstruction with an allograft" and noted
the possibility that plaintiff would require arthrodesis (knee
fusion).  Dr. Rashkoff later stated, "[b]ased on my last visit with
the patient, he had markedly diminished knee function and required
surgery."

On November 17, 2000, plaintiff was incarcerated.  At the time
he was arrested, he informed prison medical personnel about his
knee injury and said that "surgery was to be scheduled next week."
On November 20, 2000, Dr. Rashkoff spoke with prison officials and
told them the importance of keeping the knee extended in a knee
immobilizer and of the probable need for surgery.  In contrast,

defendants contend  that Correctional Managed Health Care ("CMHC") had not been provided with community medical records indicating that plaintiff was scheduled for surgery at the time of incarceration.   They maintain that at the time of his incarceration, plaintiff merely had a chronic condition, with no recent treatment, therefore his treatment options were limited.

Facility doctor, Dr. Katsnelson, sent three requests for orthopedic treatment to the Utilization Review Committee ("URC"). Plaintiff alleges that the need for orthopedic follow up for the plaintiff was marked "urgent."  The first request, sent on December 26, 2000, was denied on January 1, 2001.  Plaintiff's situation was to be managed "symptomatically."  The second request, sent on March 7, 2001, and also allegedly marked "urgent," was denied on March 21, 2001, and management without surgical relief was recommended. On August 24, 2001, plaintiff was sentenced.  The mittimus committing him to state custody expressly noted that plaintiff was in need of care beyond pain killers for his knee.   After the sentencing, Dr. Katsnelson's third request to the URC on September 18, 2001, was approved.

Plaintiff was seen at UConn's Orthopedic Clinic on October 19, 2001.  The report from the Clinic noted "chronic patella tendon rupture of 11 month duration . . . the interrupted nature of this injury will make it difficult to establish a mobile extensor mechanism . . . ."  Plaintiff alleges that three days later, Dr.

-5-

Pillai sent a request for surgical repair to the URC, but that on October 30, 2001, the URC denied the request pending the Orthopedic Clinics review of options.  Defendants submit that their "plan" was to discuss possible treatment options with Sports Medicine specialists at UConn.  However, plaintiff asserts that virtually nothing was done for him, as reflected by a note in his medical file dated November 27, 2001 which states, "Has there been any discussion of this guy's situation?"

On December 25, 2001, plaintiff was seen a second time by the orthopedic doctors at UConn.  At this point, he was informed that there were no longer viable reconstructive options for him, and he was offered either brace treatment or a knee fusion.  Plaintiff filed this action November 11, 2003.

### III. DISCUSSION

**A.  *Eleventh Amendment Immunity***

To the extent plaintiff seeks money damages against the defendants in their official capacity, his claims are barred by the Eleventh Amendment, which bars an unconsenting state from being sued for money damages in a United States Court. However, as plaintiff correctly points out, the complaint also seeks equitable relief and money damages against the defendants in their individual capacities.  These are unaffected by the Eleventh Amendment.

**B.  *Section 1983 Claim***

A prison official, such as a prison doctor, violates the

Eighth Amendment when he acts with "deliberate indifference" to the medical needs of an inmate.  <u>See Generally</u> <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).  The test for deliberate indifference has both objective and subjective components.   The plaintiff must demonstrate both that the deprivation alleged was, "sufficiently serious" in objective terms, and that the official was subjectively aware of the risk.  <u>Farmer</u>, 511 at 828, 834.  Defendants concede plaintiff's condition was serious.  The court, therefore, turns to the subjective component of deliberate indifference: the official's subjective awareness of the risk.

The Eighth Amendment Cruel and Unusual Punishments Clause is implicated only by the unnecessary and wanton infliction of pain. <u>Farmer</u>, 511 U.S. at 834.  In order to be found liable for a violation of the Eighth Amendment, a prison official must have the requisite culpable state of mind of "deliberate indifference" toward inmate health or safety.   <u>Id.</u>  Deliberate indifference is often equated with a "reckless" state of mind, as it requires a state of mind more blameworthy than negligence, but less blameworthy than malicious action.  <u>Id.</u> at 835-36.  A person is reckless if he "acts or fails to act in the face of an unjustifiable high risk of harm that is either known or so obvious that it should be known."  Prosser and Keeton § 34, ¶ 21314; *Restatement (Second) of Torts* § 500 (1965).  "The official must

-7-

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

### 1.  Mark Buchanan, M.D.

Plaintiff represents in his Memorandum in Opposition to Defendants' Motion for Summary Judgment and his Local Rule 56(a)(2) statement that he is withdrawing all claims against Dr. Buchanan. For this reason, summary judgment is **GRANTED**, dismissing the claim against Dr. Buchanan by consent.

### 2.  Cheryl Malcolm, R.N.

As stated above, once the moving party has satisfied his burden of production, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. Anderson, 477 U.S. at 250.  The nonmoving party must identify specific facts requiring trial.  Celotex Corp., 477 U.S. at 324.

The defendant Cheryl Malcolm is entitled to summary judgment. A §1983 action cannot be maintained against an individual unless that individual was personally involved in the transaction giving rise to the lawsuit. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).  Personal involvement requires not just active engagement in the alleged deprivation, Williams v. Smith, 781 F.2d 319, 3223-24 (2d Cir. 1986), but *meaningful* participation.  The court finds as a matter of law that Malcolm's involvement in this case is so tangential and

insubstantial that no reasonable jury could return a sustainable verdict against her.

The complaint's only reference to Cheryl Malcolm is in paragraph five, which alleges that she "was the operational administrator of the URC." (Compl. ¶ 5.) She is sued in her individual and official capacities." Plaintiff's papers in connection with the pending motion add nothing to this. There is no allegation or evidence, or even an argument, elaborating on Malcolm's purported role as an administrator or constitutional wrongdoer.

On the other hand, defendants' Rule 56 Statement (Defs. Rule 56 Statement ¶ 15) and the Affidavit of Dr. Pesanti (Pesanti Aff. ¶ 17), attest that Malcolm is a nurse, not a medical doctor, and that, "[w]hile [Malcolm] had a good deal of administrative oversight of the URC, the decision to defer Mr. Wood's referral to the [orthopedic clinic] pending receipt of community records were mine and I accept responsibility for those decisions." Plaintiff's only response to this, in a footnote, is, "Ms. Malcolm is not abdicated of her responsibility simply because she deferred to Dr. Pesanti's judgment." (Pl.'s Mem. Opp. Mot., at 1, n.1.) This is not enough to forestall summary judgment.

While it is true in the abstract that one is not absolved of responsibility by another's acceptance of it, in this case plaintiff has failed to allege anything to fairly suggest that

Malcolm ever had responsibility for the decisions that Pesanti acknowledges were his alone.  Thus, there is no evidence that she "deferred" to Dr. Pesanti's judgment, or that she was ever in a position to do anything but accept those decisions.  While Malcolm may be a witness, she is no longer a defendant.  Defendant Malcolm's motion for summary judgment is **GRANTED.**

### 3.  *Edward Pesanti, M.D.*

A person is reckless, for purposes of a deliberate indifference analysis, if he "acts or fails to act in the face of an unjustifiable high risk of harm that is either known or so obvious that it should be known."  Prosser and Keeton § 34, ¶ 21314; *Restatement (Second) of Torts* § 500 (1965).  Defendants claim there is no indication that Dr. Pesanti knew that waiting for the community records would expose the plaintiff to a substantial risk of serious harm, and that it was appropriate to delay treatment because the records were needed in order to better understand the injury.  (Defs.'s Reply Mot., at 11.)

While plaintiff acknowledges that it is generally important to review a patient's prior medical history before treatment, he argues that, in the circumstances of this case, the doctor should have known that the delay in treatment would lead to plaintiff's permanent disability, or, at the very least, that there is a genuine issue of material fact whether Pesanti knew or should have known.  (Pl.'s Opp. To Mot., at 8.)  That Dr. Pesanti purportedly

lacked actual knowledge that delay in treatment would expose the plaintiff to a substantial risk of serious harm is not determinative, since he may be still be liable if "the risk was so obvious he should have known."

Although defendant's expert, Dr. Arciero, opines that the treatment options available to the plaintiff at the time he was incarcerated were the same as his treatment options at the time he was treated in October 2001; that plaintiff's injury was exacerbated by his alleged failure to follow-up with his doctor after his initial injury; and that unrecoverable atrophy set in before plaintiff was incarcerated, there is a genuine dispute as to these material factual issues.

Specifically, Dr. Jokl, a board-certified orthopedic surgeon and Director of Sports Medicine at Yale Medical School, has opined that prison doctors aware of plaintiff's condition at the time of his incarceration, "would have known that without an immediate orthopedic consult, Mr. Wood's window of opportunity would close . . . [and] reconstructive surgery [would] become[] impossible." Plaintiff bolsters the import of this with his assertion that Dr. Rashkoff had plans to perform surgery at the time plaintiff was incarcerated, and even contacted prison officials and informed them of this (Id. at 7.)  In addition, Dr. Katsnelson twice recommended that plaintiff be evaluated for surgery only to be rejected both times (Id. at 7-8.)

Plaintiff argues that he had an acute condition at the time of his incarceration, that this condition threatened to cause him permanent loss of knee function if not treated, that the defendant knew or should have known this, and, yet, in the face of such information, plaintiff was denied even an evaluation (Id. at 8-9.) In passing on a Rule 56 motion, the court must draw all reasonable inferences in favor of the non-moving party. When all such inferences are drawn in plaintiff's favor, a jury could find that Dr. Pesanti knew the risks of delaying treatment for the inordinately long period here, but was indifferent to the plaintiff's serious medical needs. Accordingly, there are genuine issues of material fact that preclude summary judgment from entering in Dr. Pesanti's favor. His motion is, therefore, **DENIED.**

## C. *Qualified Immunity*

Defendant Pesanti's motion for summary judgment on his affirmative defense of qualified immunity is **DENIED WITHOUT PREJUDICE.** On the present record, the defendant has failed to sustain either his initial burden of coming forward under Fed. R. Civ. P. 56, or his burden of persuasion. In making this determination, the court does not foreclose the possibility that Dr. Pesanti may someday prevail on this defense, either by renewed motion or at trial. But for now, for the reasons set forth below, his motion fails.

Qualified immunity is an affirmative defense on which Dr.

-12-

Pesanti bears the burden of persuasion.  Varone v. Bilotti, 123 F.3d 75, 78 (2d Cir. 1996); In re State Police Litig., 88 F.3d 111, 123 (2d Cir. 1996)(citing Gomez v. Toledo, 446 U.S.635, 640 (1980)).  Where a Rule 56 movant also bears the burden of persuasion, its initial burden is higher in that it must affirmatively show that the record contains evidence sufficiently probative that no reasonable jury would be free to disregard it. 11 J. Moore, Federal Practice §56.13[1] at 56-138 and n. 10 (3d ed 2004); see also Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002).  The burden of coming forward shifts to an opponent only after the movant has sustained its burden.  Messier v. Southbury Training Sch., No. 3-94-CV-1706 (EBB), 1999 WL 20910 (D.Conn. January 5, 1999) *4 n. 2.

So far, the defendant's moving papers do not do this. Although defendant cites Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999), with its familiar language identifying when governmental officials are entitled to qualified immunity, nothing in these cases relieves a movant of its burden under Rule 56.  Here, the moving papers offer little argument or analysis.  Pesanti's qualified immunity argument consists of three paragraphs, the first of which is a lengthy quotation from X-Men.  The remaining two paragraphs – which appear to draw factual inferences in defendants favor, and to ignore many seemingly material facts in favor of the plaintiff – supply little

guidance precisely how defendant would have the court arrive at the conclusion he seeks.

"The defense of qualified immunity requires some determination about the state of constitutional law at the time the [official] acted, and the better approach is to determine the right before determining whether it was previously established with clarity." X-Men Sec., 196 F.3d at 66 (internal citation and quotation omitted). A movant must take care in identifying the right at issue, for:

> [t]he Supreme Court has instructed courts "to consider carefully the level of generality at which the relevant legal rule is to be identified." If the right is identified at a high level of generality . . . , the concept of qualified immunity would become meaningless because every government officer is reasonably aware of a right defined that broadly. On the other hand, the right need not be identified with such particularity that qualified immunity would be a defense "unless the very action in question has previously been held unlawful."

Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000)(quoting Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)). Thus far, Pesanti has not undertaken to identify the precise right at issue, nor has he employed the analytical methodology of X-Men, Zahrey, or other more recent Second Circuit cases.

Summary judgment is inappropriate where there are facts in dispute that are material to a determination of reasonableness. Kerman v. City of New York, 261 F.2d 229, 240 (2d Cir. 2001). Nor

is it appropriate where movant's papers fail to dispel uncertainty in the record.  Quinn v. Model Syracuse Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Defendant Pesanti is free to renew this defense with a properly-supported motion, or to raise it at trial.

### IV. CONCLUSION

The motion for summary judgment **(Dkt. #16)** is granted in part; denied in part; and denied without prejudice in part as follows:

The motion is **GRANTED** as to the defendants Cheryl Malcolm, R.N., and Mark Buchanan, M.D.;

The motion is **GRANTED** as to the claims for money damages against the defendant Edward Pesanti, M.D., in his official capacity;

The motion is **DENIED** at to the request for equitable relief and the claims for money damages against the defendant Edward Pesanti, M.D., in his individual capacity;

The motion of the defendant Edward Pesanti, M.D., for summary judgment in his favor of his affirmative defense of qualified immunity is **DENIED without prejudice.**

**Dated at Hartford, Connecticut, this 6th day of December, 2005.**

                              /s/ Thomas P. Smith
                              **Thomas P. Smith**
                              **United States Magistrate Judge**